UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIRGEN SARMIENTO,

                Plaintiff,

v.                                          6:15-CV-0774
                                          (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                           OF COUNSEL:

PETER M. HOBAICA, LLC            B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.      KRISTINA COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

**REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Virgen

Sarmiento ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was 40 years old at the time of the hearing.  (T. 38.)  She completed high school.  (T. 250.)  Generally, Plaintiff's alleged disability consists of chronic depression, carpal tunnel syndrome, diabetes, anxiety, and "slipped disc."  (T. 249.)  Her alleged disability onset date is June 6, 2011.  (T. 93.)  Her date last insured is December 31, 2014.  (T. 93.)  She previously worked as a corrections officer and companion.  (T. 37-38.)

### B.     Procedural History

On July 28, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 93.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On September 6, 2013, Plaintiff appeared before the ALJ, Hortensia Haaversen.  (T. 47-92.)  On January 17, 2014, ALJ Haaversen issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 19-46.)  On April 20, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-8.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 27-40.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since June 6, 2011.  (T. 27.)  Second, the ALJ found that Plaintiff had the severe impairments of myofascial pain syndrome, diabetes mellitus, depression, and anxiety.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 28-30.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional limitations. (T. 30.)  Specifically, the ALJ determined Plaintiff:

> can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for six hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; and she can perform only occasional reaching overhead.  From a mental standpoint, [Plaintiff] retains the capacity to perform simple and some complex job tasks; she can sustain attention and concentration for tasks; she has mild to moderate limitations in her ability to adapt to changes in a routine work setting, which is specifically limit[ed] to occasional changes in the work setting; and she can interact appropriately with coworkers and supervisors.

(*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 37-39.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes seven separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in affording Plaintiff's treating

physician, Ivan Antonovich, M.D., minimal weight.  (Dkt. No. 13 at 12-16 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ erred at step two.  (*Id.* at 16-18.)  Third, Plaintiff argues the ALJ erred in the weight she afforded to the State agency medical examiners.  (*Id.* at 18-21.)  Fourth, Plaintiff argues the ALJ committed legal error in failing to provide a function-by-function assessment.  (*Id.* at 21-23.)  Fifth, Plaintiff argues the ALJ impermissibly set her own expertise against that of a physician.  (*Id.* at 23-24.)  Sixth, Plaintiff argues the ALJ erred in her credibility determination.  (*Id.* at 24.)  Seventh, and lastly, Plaintiff argues the ALJ erred in her step five determination.  (*Id.* at 25.)

## B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues that in determining Plaintiff's RFC, the ALJ properly evaluated the medical evidence in the record.  (Dkt. No. 14 at 5-12 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly considered the limitations from Plaintiff's impairments.  (*Id.* at 12-14.)  Third, Defendant argues that the ALJ correctly found that Plaintiff's subjective complaints were not entirely credible.  (*Id.* at 14-16.)  Fourth, and lastly, Defendant argues that the ALJ properly relied on vocational expert ("VE") testimony at step five of the sequential process.  (*Id.* at 16-18.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of
> the specified impairments in the Listing of Impairments; (4) based on a
> 'residual functional capacity' assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order and in a

consolidated manner.

### A. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine

whether the plaintiff has a severe impairment that significantly limits his or her physical

or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c).

The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v.*

*Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,*

No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has

been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

First, Plaintiff argues that the ALJ erred in her step two determination because she failed to find Plaintiff's herniated cervical and lumbar discs severe despite "clear diagnoses." (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit because the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman,* 895 F.Supp. at 53; *see Prince,* 514 F. App'x at 20. Although the ALJ did not consider Plaintiff's neck and back impairments severe, the ALJ did consider Plaintiff's myofascial pain syndrome, which manifested the same symptomology, to be a severe impairment. (T. 27.) Indeed, Dr. Antonovich concluded that Plaintiff's neck and back impairment had a myofascial component. (T. 724.) The ALJ therefore, properly assessed Plaintiff's neck and back impairments under Plaintiff's impairment of myofascial pain syndrome.

Further, any error in classifying Plaintiff's neck and back impairments as severe was harmless because the ALJ clearly considered any limitations due to these impairments in his RFC analysis and determination. For example, in her step four analysis, the ALJ discussed Plaintiff's herniated discs in neck and back and Plaintiff's alleged limitations due to these impairments. (T. 32.) The ALJ further discussed lumbar and cervical MRIs in his step four analysis. (T. 34.) Therefore, any error in

failing to specifically find Plaintiff's neck and back impairments was harmless because the ALJ found Plaintiff had severe impairments at step two and the ALJ discussed Plaintiff's severe and non-severe impairments in her step four analysis.

Second, Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff's post-traumatic stress disorder was severe. (Dkt. No. 13 at 17-18 [Pl.'s Mem. of Law].) Plaintiff's brief failed to provide any citation to the record in support of her argument. (*Id.*) Again, any error here was harmless. The ALJ found Plaintiff had the severe mental impairments of depression and anxiety. (T. 27.) The ALJ thoroughly discussed Plaintiff's mental impairments, and functional limitations, throughout her decision. (T. 28-30, 35-36.) Therefore, any error here is harmless because the ALJ found that Plaintiff had severe mental impairments and discussed Plaintiff's mental impairments at all relevant steps of the sequential process.

Third, Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff's carpal tunnel syndrome was severe. (Dkt. No. 13 at 18 [Pl.'s Mem. of Law].) Again, any error here is harmless. Although the ALJ did not find Plaintiff's carpal tunnel syndrome severe, the ALJ discussed this medical condition elsewhere in her decision and specifically noted medical evidence indicating that Plaintiff had full strength in her hands. (T. 32, 34, 36-37.)

It is recommended that the ALJ's step two determination be upheld. Ultimately, any error the ALJ may have made at step two was harmless because the ALJ found that Plaintiff had severe physical and mental impairments at step two and the ALJ "clearly considered the effects of the impairment in the remainder of his analysis." *Chavis,* 2010 WL 624039, at *12; *Lasiege*, 2014 WL 1269380, at *10-11 *Reices-Colon*,

523 F. App'x at 798 (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

B.    **The ALJ's RFC Determination**

Plaintiff's RFC is the most she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making an RFC determination, the ALJ will base her determination on an assessment of all the relevant evidence in the case record. *See id.* Further, Plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis. *See id.* at §§ 404.1545(b)-(c), 416.945(b)-(c). "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

In formulating an RFC the ALJ will afford weight to the medical opinion evidence in the record. The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the treating source opinion should receive, even if it is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

i.    **Physical RFC**

On October 2, 2013, Plaintiff's pain management specialist, Ivan Antonovich, M.D., completed a medical source statement. (T. 725-730.) Therein, Dr. Antonovich opined that Plaintiff could lift and carry up to ten pounds; could sit for a total of three hours in an eight-hour workday; could stand for a total of three hours in an eight hour work-day; could walk for a total of two hours in an eight hours work-day; could never climb ladders or scaffolds, stoop, kneel, or crawl; and could occasionally climb ramps and stairs, kneel, or crawl. (T. 725-726.)

The ALJ afforded Dr. Antonovich's statement "minimal weight." (T. 37.) The ALJ reasoned that Dr. Antonovich's statement was not consistent with the overall medical evidence of record, including his own treatment notations. (*Id.*)

Plaintiff argues that the ALJ committed legal error in her assessment of Dr. Antonovich's statement because the ALJ failed to provide good reasons for not crediting his opinion and instead only provided a conclusory statement that his opinion was inconsistent with medical evidence. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. Contrary to Plaintiff's assertion, the ALJ provided examples from the record which she considered inconsistent with Dr. Antonovich's statement.

In her discussion of Dr. Antonovich's statement the ALJ specifically referenced notations in the medical record which did not support the limitations imposed by the doctor. (T. 37.) For example, the ALJ relied on treatment notations which indicated that Plaintiff's pain improved after steroid injections. (*Id.*) Where a treating physician's treatment notes did not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009). Therefore, the ALJ provided more than a conclusory statement in her determination to afford Dr. Antonovich's statement weight.

Plaintiff next argues that the ALJ impermissibly "cherry picked" the record in her evaluation of Dr. Antonovich's statement. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) To be sure, ALJs are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello*

*v. Heckler,* 725 F.2d 174, 175-176 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004). Here, the ALJ permissibly, and within her discretion, resolved conflicts in the record.

Plaintiff argues that the ALJ erred in her evaluation of the medical evidence because the ALJ failed to discuss Plaintiff's reports of pain and instead focused on notations of improvement of symptoms. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) First, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Second, in her decision the ALJ thoroughly laid out the medical evidence in the record. (T. 34-37.) In affording Dr. Antonovich's opinion minimal weight, the ALJ properly cited notations in the record indicating that Plaintiff received relief from treatment. (T.37.) Therefore, the ALJ did not "cherry pick" the record because the ALJ's decision indicated that she took into consideration all of the medical evidence in the record and further, the ALJ laid out evidence in the record which she concluded was inconsistent with Dr. Antonovich's statement.

Plaintiff next contends that the ALJ erred because she failed to discuss Plaintiff's ability to stoop. (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) To be sure, the ALJ did not specifically discuss Plaintiff's ability to stoop. However, the ALJ did provide good reasoning for not affording controlling weight to Dr. Antonovich's statement, which included a limitation to no stooping. (T. 37.) As outlined by the Defendant, the ALJ relied on the objective medical evidence in the record which showed Plaintiff had a

normal gait, full strength throughout, and intact reflexes. (Dkt. No. 14 at 7 [Def.'s Mem. of Law], *referring to* T. 401, 496, 506, 577, 699, 703, 706, 710, 716-717.)

Further, any error the ALJ may have made would be harmless. Even had the ALJ determined that Plaintiff was unable to stoop, such a limitation would not preclude Plaintiff from performing any of the occupations provided by the vocational expert ("VE") because none of the occupations require that a plaintiff stoop. *See* DOT 222.687-014, 363.685-026, 734.687-014, 731.685-014, 739.687-182, 521.687-086.

Plaintiff's argument, that the ALJ "completely failed to properly assess the effect of Plaintiff's myofascial pain syndrome (MPS)," is also without merit. (Dkt. No. 13 at 15-16 [Pl.'s Mem. of Law].) ALJ discussed Plaintiff's MPS, its symptoms and its limitations, throughout her decision. The ALJ found MPS a severe impairment at step two. (T. 27.) The ALJ evaluated Plaintiff's MPS at step three. (T. 28.) The ALJ considered Plaintiff's MPS in formulating her RFC determination. (T. 32-37.) Plaintiff cites to evidence in the record that she had moderate tenderness on examination and asserts that the ALJ improperly substitute her own opinion for that of Dr. Antonovich in concluding that such findings did not support the doctor's opinion. (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].) However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.

Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by

substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Here, Plaintiff merely highlights evidence in the record which she contends supports her argument.  Therefore, Plaintiff failed to show that no reasonable factfinder could have reached the ALJ's conclusion and it is recommended that the ALJ's assessment of Dr. Antonovich's statement be upheld.

### ii.    Mental RFC

Plaintiff argues that the ALJ's mental RFC determination  was not supported by substantial evidence because the ALJ failed to provide the opinion of the consultative examiner, Christina Caldwell, Ph.D., proper weight.  (Dkt. No. 13 at 18-21 [Pl.'s Mem. of Law].)

On November 9, 2011, Dr. Caldwell examined Plaintiff and provided a medical source statement.  (T. 509-513.)  Dr. Caldwell opined that based on her examination, Plaintiff was able to follow and understand simple directions and instructions.  (T. 512.) Dr. Caldwell opined that Plaintiff was limited in her ability to: perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; and learn new tasks.  (*Id.*)  She opined Plaintiff was unable to make appropriate decisions; unable to relate adequately with others; and unable to appropriately deal with stress. (*Id.*)

The ALJ afforded Dr. Caldwell's opinion "little weight."  (T. 36.)  The ALJ reasoned that although Dr. Caldwell's opinion was supported by her examination of

Plaintiff, her opinion was not consistent with new evidence in the record. (*Id.*) Plaintiff argues that the ALJ erred in her reasoning because she failed to outline or discuss the new evidence she relied on and instead the ALJ only provided a conclusory statement. (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. The ALJ provided specific citations from the record of evidence obtained after Dr. Caldwell provided her opinion which did not support her medical source statement.

The ALJ outlined in great detail Plaintiff's mental health treatment record subsequent to Dr. Caldwell's examination. (T. 35.) In her analysis of Dr. Caldwell's opinion the ALJ referred to mental health treatment notations from 2013 indicating that Plaintiff's mood/affect was bright, reactive and euthymic and that Plaintiff was pleased with her current medication regiment and her symptoms were controlled. (T. 36.) Indeed, treatment notations indicated that Plaintiff was cooperative, related adequately, was fully oriented, had clear and goal-directed thoughts, and had intact memory and concentration. (T. 385, 472, 474, 482, 631.) Plaintiff reported her depression was well controlled with medication. (T. 402, 405, 427, 488.) At one point Plaintiff informed her treating mental health provider that she felt like herself again. (T. 490.) Therefore, contrary to Plaintiff's assertions, the ALJ relied on specific notations in the record obtained after Dr. Caldwell's examination, which did not support the doctor's opinion.

Plaintiff argues the ALJ had a duty to request a medical source statement from Plaintiff's treating mental health provider before making her determination. (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].) An ALJ has a duty to develop the record, whether or not the plaintiff is represented. *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996). An ALJ need not, however, seek additional detail from a given provider if the record contains notes from

that provider "adequate for the ALJ to determine [the plaintiff's] disability." *Whipple v. Astrue,* 479 F. App'x. 367, 370 (2d Cir.2012). The ALJ has a duty to seek records from treating sources, but is not hamstrung by the search's shortcomings. *Merritt v. Colvin*, No. 5:12-CV-01341, 2015 WL 6835012, at *3 (N.D.N.Y. Nov. 2, 2015); *Streeter v. Comm'r of Soc. Sec.,* No. 5:07-CV-858, 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011). Rather, an ALJ may, in appropriate cases, "satisfy the duty to develop the record by relying on the plaintiff's counsel to obtain additional medical documentation." *Wozniak v. Comm'r of Soc. Sec.,* No. 1:14-CV-00198, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015); *Myers ex rel. C.N. v. Astrue,* 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012).

Here, the record was sufficient enough for the ALJ to make a conclusion regarding Plaintiff's mental limitations. The record contained numerous mental health treatment notations dating from 2010 to 2014. Further, Plaintiff's attorney requested additional time to obtain medical source statements from Plaintiff's treating sources, which the ALJ granted. (T. 51-52.) Plaintiff did not submit a medical source statement from a treating mental health provider. Because the record was sufficiently complete, and Plaintiff's counsel attempted to obtain a medical source statement from a treating mental health provider without success, the ALJ had no duty to re-contact the treating provider. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009) (where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913 and there is no indication that further contact will result in additional information, re-contact is not necessary.)

On January 4, 2012, non-examining State agency medical consultant, C. Butensky, completed a mental RFC assessment.  (T. 602-604.)  Dr. Butensky opined that Plaintiff was not significantly limited in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation.  (T. 602-603.)

Dr. Butensky opined that Plaintiff had moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  (T. 602-603.)  In support of his determination, Dr. Butensky provided a detailed narrative outlining the medical evidence in the record.  (T. 555.)

Plaintiff argues the ALJ erred in affording "great weight" to Dr. Butensky's opinion because the doctor's opinion cannot constitute substantial evidence to overcome Plaintiff's "well documented mental health treatment record."  (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].)  It is well settled that an ALJ is entitled to rely upon the opinions of both

examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e).  "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).  In making her mental RFC determination the ALJ relied on the report of Dr. Butensky and the objective mental status examinations conducted by Plaintiff's treating mental health providers.  (T. 36.)

As outline herein, and in Defendant's brief, Plaintiff's mental status examinations supported the ALJ's determination that Plaintiff was capable of performing the basic mental demands of unskilled work.  (Dkt. No. 14 at 8-10 [Def.'s Mem. of Law].)  Therefore, it is recommended that the ALJ's mental RFC determination be upheld because the ALJ properly relied on the opinion of Dr. Butensky and the objective mental status examinations in the record.

### iii. Function-by-function Analysis

Plaintiff argues the ALJ erred in her step four determination because she failed to conduct a function-by-function analysis. (Dkt. No. 13 at 21-23 [Pl.'s Mem. of Law].) The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir. 2013). Therefore, the ALJ did not commit legal error in failing to conduct an explicit function-by-function analysis.

### iv. Lack of Medical Opinion

Plaintiff argues that the ALJ impermissibly substituted her own lay opinion for that of a medical opinion in formulating an RFC because the record lacks a medical source statement specifically supporting her RFC determination. (Dkt. No. 13 at 23-24 [Pl.'s Mem. of Law].)

Where "the record contains sufficient evidence from which an ALJ can assess the plaintiff's residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), a medical source statement or formal medical opinion is not necessarily required. *See id.; Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he rejected physician's opinion but relied on physician's findings and treatment notes.) Therefore, although the record does not contain a medical source statement that aligns seamlessly with the ALJ's physical and mental RFC determination, the ALJ properly relied on opinion evidence in the record as well as objective medical evidence in the record in formulating her RFC determination.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve his pain or

other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible.  (T. 33.)  Plaintiff argues that the ALJ committed legal error in her credibility determination because she "failed to offer a sufficient narrative discussion giving reasons for her rejection of Plaintiff's statements concerning her pain and limitations."  (Dkt. No. 13 at 24 [Pl.'s Mem. of Law].)  Plaintiff's brief provides no additional support for her argument.

Contrary to Plaintiff's conclusory argument, the ALJ provided a sufficient narrative and gave specific reasons supporting her credibility determination.  The ALJ discussed Plaintiff's testimony, her activities of daily living, her medications and other treatments, and her work history.  (T. 31-33.)  The ALJ cited specific medical evidence in the record in support of her credibility determination.  (T. 33.)  The ALJ further relied on Plaintiff's activities of daily living, objective medical imaging, and medical opinion evidence.  (T. 33-34.)  Therefore, the ALJ went into great detail outlining the medical record, the treatment Plaintiff received, the effect treatment had on her impairments, and her activities of daily living.  It is recommended that the ALJ's credibility determination be upheld because, contrary to Plaintiff's conclusory assertion, the ALJ provided a detailed narrative in support of her credibility determination.

### D.     The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in relying on VE testimony that Plaintiff could perform work in the national economy because the hypothetical presented to the VE was not an accurate representation of Plaintiff's limitations.  (Dkt. No. 13 at 25 [Pl.'s Mem. of Law].)  For the reasons stated herein, the ALJ's RFC determination was made in accordance with the Regulations and supported by substantial evidence.  Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        February 17, 2017

William B. Mitchell Carter
U.S. Magistrate Judge